02-21619

U.S. DISTRICT COURT FOR THE SOUTHERN DISTRICT OF FLORIDA

David Solomon,    Plaintiff,

v.

Case No.:  CIV-UNGARO-BENAGES

MAGISTRATE
BROWN

Supreme Court of Florida, Hon. Charles T. Wells, Hon. Ben F. Overton, Hon. Leander J. Shaw, Hon. Major B. Harding, Hon. Gerald Kogan, Hon. Stephen H. Grimes, The Florida Bar, John F. Harkness Jr., John T. Berry, Joseph A. Corsmeier Jr., Florida Bar Board of Governors, Herman J. Russomanno, Edith G. Osman, John W. Frost II, Edward B. Blumberg, Alan B. Bookman, Enoch J. Whitney, Hon. Charles A. Frances, Bruce W. Robinson, Howard C. Coker, Henry M. Coxe III, Roger L. Rice, Hon. Morris Silberman, Anthony S. Battaglia, Edgar M. Dunn Jr., James G. Feiber Jr., Bruce B. Blackwell, Lawrence J. Phalin, Jack P. Brandon, Miles A. McGrane III, Tod Aronovitz, Manuel R. Morales, Cynthia A. Everett, John W. Thornton Jr., Dean C. Colson, Stuart Z. Grossman, Scott L. Baena, John C. Patterson Jr., Martin L. Garcia, Ricardo A. Fernandez, Marsha G. Rydberg, Dixon Ross McCloy Jr., Carol McLean Brewer, Robert V. Romani, Michael P. Walsch, Allison Defoor II, Michele Kane Cummings, David D. Welsch, William S. Spencer, Jesse H. Diner, John Hume, S. Sammy Cacciatore Jr., Louis B. Vocelle Jr., John P. Cardillo, Marguerite S. Boyd, Robert Weinroth, Michael Stafford, Matthew J. Comisky, Adam G. Adams III, Wilhelmena Mack, and Alvin E. Smith M.D.,   Defendants.

---

Complaint for 1983 Injunction and 1983 Damages.

1983 Jurisdiction For Injunction.

I. Subject Matter Jurisdiction--Judicial Immunity and Rule 11.

I. *Pulliam* Held That Judicial Immunity is Not A Bar to a District Court's Subject Matter Jurisdiction to Enjoin A Defendant-Judge's Unconstitutional State Court Order.  Therefore, this Court Should Use Rule 11 To Stop Defendant-Judges From Frivolously Misrepresenting That Judicial Immunity Is a Bar To This District Court's Subject Matter Jurisdiction To Enjoin Defendant-Judges's Admittedly Unconstitutional State Court Order.

1. *Pulliam v. Allen*, 466 U.S. 522, 528 (1984) observed that, "injunctive relief

-1-

against a judge is rarely awarded". Therefore, on rare occasions injunctive relief against a judge <u>is</u> awarded. The rarity of injunctive relief against a judge may be why federal and state courts in the DC, FL and NY companion cases did not understand, and then did not follow *Pulliam's* explicit holding that judicial immunity is not a bar to a district court's subject matter jurisdiction to enjoin a defendant-judge's unconstitutional state court order. The main issue in this case is whether this Court can understand and follow the law in *Pulliam*. *Pulliam* held that judicial immunity is not a bar to district court subject matter jurisdiction to enjoin defendant-judges's[1] admittedly unconstitutional state court order. *Pulliam* at page 541 held,

> We remain steadfast in our conclusion, nevertheless, that Congress intended section 1983 to be an independent protection for federal rights and find nothing to suggest that Congress intended to expand the common-law doctrine of judicial immunity to insulate state judges completely from federal collateral review.
> We conclude the judicial immunity in not a bar to prospective injunctive relief against a judicial officer acting in her judicial capacity.

Please also see *Pulliam*'s reliance (p.528, 544) on *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719 (1980)(U.S. Supreme Court upheld the district court's subject matter jurisdiction and order that prospectively enjoined the Virginia Supreme Court's unconstitutional attorney discipline rule and order).

    2. Defendant-judges admitted in their D.C. Court of Appeals answer brief that,

---

[1]"Judges's" is the correct usage for a possessive plural noun.

"*Pulliam* held that the doctrine [judicial immunity] does not bar a suit for injunctive relief." Orally, and contrary to their brief, defendant-judges misrepresented that judicial immunity <u>does</u> bar district court subject matter jurisdiction to enjoin defendant-judges's admittedly unconstitutional order. Previous courts never decided the rule 11 motions to stop defendant-judges's misrepresentation of *Pulliam*'s holding that contradicted their brief. This case would have been resolved for plaintiff by summary judgment if any previous court decided the rule 11 motions and stopped defendant-judges's misrepresentation of *Pulliam*'s holding that contradicted their brief.

3. Plaintiff motions under rule 11 to stop defendant-judges's frivolous misrepresentation contrary to their brief that judicial immunity bars this district court's subject matter jurisdiction to enjoin their admittedly unconstitutional state court order.

## II. Subject Matter Jurisdiction--Supremecy Clause and Rule 11.

II. The Supremecy Clause Requires That Federal Law Preempts An Unconstitutional Application of State Law. Therefore, This Court Should Use Rule 11 To Stop Defendant-Judges From Frivolously Misrepresenting That The Unconstitutional Application Of The Florida Constitution's "Exclusive Jurisdiction" Provision <u>Is</u> A Bar To This District Court's Subject Matter Jurisdiction To Enjoin Defendant-Judges's Admittedly Unconstitutional State Court Order.

4. The Supremecy Clause provides that federal law that requires notice and hearing preempts any application of state law that denied notice and hearing.

-3-

5. Defendant-judges refuse to admit that paragraph 4 above is true. Defendant-judges frivolously misrepresent that the Florida Constitution's Article V provision that defendant-judges have "exclusive jurisdiction" over attorney punishment <u>preempts the Supremecy Clause and federal law</u> and legally allows them to apply this state law to deny plaintiff's federal constitutional right to notice and hearing. Defendant-judges frivolously misrepresent that the Florida Constitution's Article V "exclusive jurisdiction" <u>preempts this district court's subject matter jurisdiction</u> necessary to defend the U.S. Constitutional right to notice and hearing against this unconstitutional application of Florida state law.

6. This case would have been resolved for plaintiff by summary judgment if any previous court decided the rule 11 motions and stopped defendant-judges from frivolously misrepresenting that the Florida Constitution's Article V "exclusive jurisdiction" <u>preempts district court subject matter jurisdiction</u> necessary to defend the U.S. Constitutional right to notice and hearing against this unconstitutional application of Florida state law.

7. Plaintiff motions under rule 11 to stop defendant-judges from frivolously misrepresenting that an unconstitutional application of Florida state law preempts federal law that requires notice and hearing.

### III. Subject Matter Jurisdiction--Rooker-Feldman and Rule 11.

III. *Rooker* Required A "Full Hearing" And A Judgment That Was

-4-

> "Responsive to The Issues". Therefore, this Court Should Use Rule 11 To Stop Defendant-Judges's from Frivolously Misrepresenting That Rooker-Feldman Is A Bar To Subject Matter Jurisdiction To Enjoin Defendant-Judges's Order That Even They Admitted Was Not Based on A Full Hearing or A Judgment That Was Responsive To The Issues.

8. *Rooker v. Fidelity Trust Co.*, 150 U.S. 413, 415 (1923) held that a U.S. District Court has subject matter to revisit a state court judgment that did not provide a "full hearing" and was not a judgment that was "responsive to the issues" that should have been raised in a full hearing.

9. Defendant-judges refuse to admit that paragraph 8 above is true. Defendant-judges frivolously misrepresent that Rooker-Feldman bars this district court's subject matter jurisdiction where even defendant-judges admitted that their order was not based on a "full hearing" and was not a judgment that was "responsive to the issues" that should have been raised in a full hearing.

10. This case would have been resolved for plaintiff if any previous court decided the rule 11 motions and stopped defendant-judges's from frivolously misrepresenting that Rooker-Feldman is a bar to U.S. District Court subject matter jurisdiction to revisit defendant-judges's state court order that even they admitted was not based on a "full hearing" and was not a judgment that was "responsive to the issues" that should have been raised by a full hearing.

11. Plaintiff motions under rule 11 to stop defendant-judges from frivolously misrepresenting that Rooker-Feldman is a bar to this district court's subject matter

-5-

jurisdiction to revisit defendant-judges's state court order that even they admitted was not based on a "full hearing" and was not a judgment that was "responsive to the issues" that should have been raised in a full hearing.

Venue Is Proper In the County Where Most Defendants Live and Work.

12. Plaintiff's venue choice should be honored if it is proper under the Florida venue statute. Venue is proper under the Florida venue statute in either the county where most of the defendants live and work or where the cause of action arose. Plaintiff's venue choice is proper under the venue statute because more defendants live and work in Dade and surrounding counties than any other county. The 1983 cause of action arose in the Willard Hotel in Washington, D.C.

13. The relevant clause in section 1983 to determine where a cause of action arose states, "Every person who...[under color of state law]...<u>subjects or causes to be subjected,</u> any citizen..." [underline supplied] to a deprivation of constitutional rights is liable in an "action at law, suit in equity". The Board, acting as the duly authorized agent of the Florida Supreme Court, <u>subjected or caused to be subjected</u> plaintiff to deprivation under color of state law of his constitutional rights of notice and hearing at their annual out of state meeting in the Willard Hotel in Washington, D.C. on March 21, 1997. This was done under the physical supervision of the then Florida Supreme Court Chief Justice Kogan. The constitutionally tortious acts of all defendants <u>arose</u> under 1983 when the Board <u>subjected or caused plaintiff to be</u>

-6-

subjected to a constitutional deprivation when it voted to recommend to the Florida Supreme Court that plaintiff's Florida law license be suspended based on matters that were never charged. This constitutional deprivation of notice and hearing **continued** and fully matured when rehearing was denied on June 11, 1998. (The order provided plaintiff stop practicing law on or before March 30, 1998.) The D.C. courts have personal jurisdiction under the D.C. long-arm statute (13-423 D.C. Code) because the cause arose in D.C.. This is because the D.C. long-arm statute states the court has, "personal jurisdiction over a person, who acts directly or by an agent, as to a claim arising from the person's--(1) transacting any business in the District" [underline supplied]. There is personal jurisdiction under the D.C. long-arm statute because (1) the Board is the duly authorized agent of the Florida Supreme Court and (2) ALL business transacted by the Board concerning plaintiff occurred in the Willard.

Facts.

14. Plaintiff David Solomon is an attorney whose Florida and New York law licenses were unconstitutionally suspended based on the unconstitutional state court order of the Florida Supreme Court in *Florida Bar v. Solomon*, 711 So.2d 1141 (Fla.1998).

15. *Solomon* was unconstitutional because *Solomon* held that plaintiff's Florida law license was suspended based on matters, "that were not charged in the Bar's

-7-

complaint".

16. 85 days later, defendant-judges admitted *Solomon* was unconstitutional by their holding in the footnote of the unrelated *Vernell* case. The *Vernell* footnote held that "prior opinions" that punished an attorney based on matters, "that were not charged in the complaint" were unconstitutional.

17. Plaintiff cited the *Vernell* footnote in his timely motion to vacate *Solomon* as unconstitutional. Defendant-judges apparently responded by altering and then omitting the *Vernell* footnote without changing the reversal of the *Vernell* trial court that was explained by the *Vernell* footnote. Defendant-judges denied plaintiff's timely motion to vacate with no explanation.

18. Defendant Supreme Court of Florida published *Solomon*. The three steps to punish attorneys are a trial, proposed punishment order by the defendant-Board (all of which occurred in D.C.), and ratification and or amendment of the proposed punishment order by the defendant-judges.

19. Defendant-judges Chief Justice Charles Wells, Justice Leander Shaw, Justice Major Harding, Justice Ben Overton (ret.), Justice Stephen Grimes (ret.), and Justice Gerald Kogan (ret.) were six of the seven members of the Florida Supreme Court who authored *Solomon*.

20. Defendant Florida Bar is an official arm of the Florida Supreme Court that assisted the Defendant Board of Governors to submit the proposed attorney

-8-

punishment order.

21. Defendants John F. Harkness Jr., John T. Berry, and Joseph A. Corsmeier Jr., were at all times relevant to this complaint officers of the Florida Bar whose titles were respectively Executive Director, Director of Lawyer Regulation, and Assistant Staff Counsel.

22. Defendant Florida Bar Board of Governors are the agents of the Florida Supreme Court that submit proposed attorney punishment orders for ratification and or amendment by the Florida Supreme Court.

23. When the Board of Governors submitted the proposed punishment order to the Florida Supreme Court, the members of the Board were Defendants Herman Russomanno, John W. Frost II, Edward R. Blumberg, Enoch J. Whitney, Hon. Charles A. Francis, Howard C. Coker, Henry M. Coxe III, Hon. Morris Silberman, Edgar M Dunn Jr., James G. Feiber Jr., Bruce B. Blackwell, Lawrence J. Phalin, Jack P. Brandon, Miles A. McGrane III, Tod Aronovitz, Manuel R. Morales Jr., Cynthia A. Everett, Edith G. Osman, John W. Thornton Jr., Stuart Z. Grossman, Scott L. Baena, John C. Patterson Jr., Martin L. Garcia, Marsha G. Rydberg, Dixon Ross McCloy Jr., J. Allison Defoor II, Michele Kane Cummings, David D. Welch, Jesse H. Diner, John Hume, S. Sammy Cacciatore Jr., Louis B. Vocelle Jr., John P. Stafford, Matthew J. Comisky, Adam G. Adams III, Wilhelmina Mack, Alvin E. Smith M.D., Alan B. Bookman, Bruce W. Robinson, Roger L. Rice, Anthony S.

Battaglia, Dean C. Colson, Ricardo A. Fernandez, Carol McLean Brewer, Robert V. Romani, Michael Walsch, William S. Spencer, and Michael S. Weinroth.

24. Plaintiff's Florida law license was suspended based on five guilty findings.

25. Only one guilty finding, the "medical care" guilty finding, was charged in the bar's 217 paragraph, 55 page complaint. Therefore, plaintiff was found not guilty of 216 of the 217 paragraphs charged in the 55 page complaint.

26. Four guilty findings were not charged in the complaint.

27. All five guilty findings were objectively false, contrary to objective record fact, and contrary to the factual findings. The petition for a writ of certiorari and petition for rehearing filed in the U.S. Supreme Court in *Solomon v. Florida Bar*, 525 U.S. 965 (1998) reh. denied 525 U.S. 1129, USSC case number 98-425 and affidavits of former Florida Supreme Court Justice Karl and former N.Y Court of Appeals Judge Titone are incorporated by reference herein verbatim.

28. All five guilty findings were objectively false because,

1. The "medical care" guilty finding misrepresented that the words "medical care" were not pled in a lawsuit filed on behalf of court declared indigent Elisa Fernandes. The words "medical care" were pled in paragraph 8 of that client's lawsuit.

2. The "ultimately failed" guilty finding represented that the indigency affidavit "ultimately failed" to cause the Florida Supreme Court to waive its $250 filing fee to review a discovery matter for pro bono court declared indigent Marjorie Keene. The Florida Supreme Court's files and *Solomon* itself reflect that the $250 fee was waived based on the indigency affidavit.

    3. The "venue challenge" guilty finding represented that the venue challenge to transfer Ms. Fernandes's case to a neighboring county subjected the case to a final dismissal rather than a transfer, even though the case was transferred to the neighboring county. All Florida cases held the proper disposition of a venue challenge is transfer, not final dismissal.

    4. The "final appeal" guilty finding represented that even though all time limits in the rules were complied with to win court declared indigent Ms. Fernandes's final appeal were met, that the "delay" caused by the time necessary under the rules to win an appeal was "incompetence" under bar rules.

    5. The "non-final" guilty finding misrepresented that the 39 days necessary to decide Sharon Breene's non-final appeal caused "delay" in the lower court proceedings that was "incompetence" under bar rules. Florida appellate rule 1.530(f) that governs non-final appeals states that there is no "delay" in the lower court proceedings by a non-final appeal because during a non-final appeal, the lower court may proceed with all matters including trial or a final hearing.

  29. Before the order was final, the U.S.D.C. for the Middle District of Florida dismissed an injunction based on the abstention doctrine, *Solomon v. Florida Bar*, 97-546-CIV-T-24(B). The court abstained from a pending action that became final on June 11, 1998.

  30. In another and unrelated sham bar proceeding several years earlier, plaintiff voluntarily complied with the bar's request to submit to mental competency testing, the results of which were completely normal and confidential under law.

  31. Bar prosecutor Joe Corsmeier apparently illegally gained access to the confidential records.

  32. Bar prosecutor Corsmeier compounded this apparently illegal conduct by

falsely representing to Florida Appellate Judge David Patterson that the results of this testing were not normal. Corsmeier's apparently illegal and defamatory conduct suborned false testimony by appellate judge Patterson against plaintiff. Appellate Judge Patterson's suborned false testimony apparently caused the Florida Supreme Court to resort to an admittedly unconstitutional order to suspend plaintiff from the practice of law.

33. Defendants false statements that they knew or had reason to know were false, unconstitutional procedures that they know or had reason to know were unconstitutional, and other illegal acts that they knew or had reason to know were illegal acts, were all done under color of state law and formed a successful and vindictive campaign to unlawfully destroy plaintiff's livelihood, personal and professional reputation. The false statements, including but not limited to "agenda item #8", *Solomon*, and falsification of the mental competency results, were publications that were slanderous per se, libelous per se, defamatory on their face, exposed plaintiff to public scorn, hatred, contempt, ridicule, and imputed to plaintiff's character either directly or by colloquium and/or innuendo, that plaintiff was incompetent in his profession. These statements were made for the purpose of injuring plaintiff's reputation, were motivated by ill-will, spite and hatred toward plaintiff. These false statements were published to numerous persons in the offices of the FLORIDA BAR BOARD OF GOVERNORS and SUPREME COURT OF

FLORIDA, both directly, indirectly and to other persons. These defamatory statements were widely published throughout plaintiff's professional community and throughout Florida, New York and the United States. New York reciprocally suspended plaintiff's New York law license indefinitely based on these defamatory statements until reinstatement of plaintiff's Florida law license.

34. The proximate consequence of the unconstitutional procedure in the Willard Hotel by the FLORIDA BAR BOARD OF GOVERNORS on or about March 19-21, 1997 under color of state law, was that these unconstitutional acts and procedures under color of state law were ratified and adopted by the SUPREME COURT OF FLORIDA in *Solomon*. These defamatory publications caused plaintiff injury to his reputation, pain, mental anguish, humiliation, and a stress induced angina attack and related heart disease.

35. FLORIDA BAR BOARD OF GOVERNORS maliciously prosecuted this matter because all statements in agenda item #8 were known or should have been known to be false, and had the bar proceeding been decided according to law rather than with the apparently improper influence these defendants asserted to obtain this unlawful result, none of the five unconstitutional guilty findings would have been used as a basis to punish plaintiff.

CLAIMS.

36. (1983) A cause of action is stated by DAVID SOLOMON against a

defendant under 42 U.S.C. section 1983 if that defendant under color or state statute, ordinance, regulation, custom or usage, caused to be subjected DAVID SOLOMON, a citizen of the United States, to the deprivation of his rights, privileges or immunities secured by the Fourteenth Amendment's due process and equal protection, and would therefore be liable to DAVID SOLOMON for these injuries in an action at law, suit in equity, or other proper proceeding.

37. (Malicious Prosecution) A cause of action is stated by DAVID SOLOMON against a defendant for malicious prosecution if that defendant has maliciously prosecuted DAVID SOLOMON by acts under its control which effectively originated in the Willard Hotel on or about March 19-21, 1997 and which continued and fully matured when DAVID SOLOMON's Florida law license suspension became final on June 11, 1998; and would therefore be liable to DAVID SOLOMON for these injuries in an action at law, suit in equity, or other proper proceeding for redress.

38. (Defamation) A cause of action is stated by DAVID SOLOMON against a defendant for defamation for the false statements that they knew or should have known to be false that effectively originated in the Willard Hotel on or about March 19-21, 1997 and which continued and fully matured when DAVID SOLOMON's Florida law license suspension was final on June 11, 1998; and would therefore be liable to DAVID SOLOMON for these injuries in an action at law, suit in equity, or

other proper proceeding for redress.

## COUNT 1

39. Plaintiff incorporates paragraphs 1-36 to assert his 1983 claim against the SUPREME COURT OF FLORIDA.

## COUNT 2

40. Plaintiff incorporates paragraphs 1-36 to assert his 1983 claim against the Florida Supreme Court Justices named in paragraph 19, jointly and severally and as individuals.

## COUNT 3

41. Plaintiff incorporates paragraphs 1-36 to assert his 1983 claim against the FLORIDA BAR.

## COUNT 4

42. Plaintiff incorporates paragraphs 1-36 to assert his 1983 claim against the three Florida Bar officials named in paragraph 21, jointly and severally and as individuals.

## COUNT 5

43. Plaintiff incorporates paragraphs 1-36 to assert his 1983 claim against the FLORIDA BAR BOARD OF GOVERNORS.

## COUNT 6

44. Plaintiff incorporates paragraphs 1-36 to assert his 1983 claim against the

-15-

fifty Board members named in paragraph 23, jointly and severally and as individuals.

## COUNT 7

45. Plaintiff incorporates paragraphs 1-35 and 37 to assert his malicious prosecution claim against the SUPREME COURT OF FLORIDA.

## COUNT 8

46. Plaintiff incorporates paragraphs 1-35 and 37 to assert his malicious prosecution claim against the Florida Supreme Court Justices names in paragraph 19, jointly and severally and individually.

## COUNT 9

47. Plaintiff incorporates paragraphs 1-35 and 37 to assert his malicious prosecution claim against the FLORIDA BAR.

## COUNT 10

48. Plaintiff incorporates paragraphs 1-35 and 37 to assert his malicious prosecution claim against the three Florida Bar officials named in paragraph 21, jointly and severally and as individuals.

## COUNT 11

49. Plaintiff incorporates paragraphs 1-35 and 37 to assert his malicious prosecution claim against the FLORIDA BAR BOARD OF GOVERNORS.

## COUNT 12

50. Plaintiff incorporates paragraphs 1-35 and 37 to assert his malicious prosecution claim against the fifty Board members named in paragraph 23, jointly and severally and individually.

## COUNT 13

51. Plaintiff incorporates paragraphs 1-35 and 38 to assert his defamation claim against the SUPREME COURT OF FLORIDA.

## COUNT 14

52. Plaintiff incorporates paragraphs 1-35 and 38 to assert his defamation claim against the Florida Supreme Court Justices named in paragraph 19, jointly and severally and individually.

## COUNT 15

53. Plaintiff incorporates paragraphs 1-35 and 38 to assert his defamation claim against the FLORIDA BAR.

## COUNT 16

54. Plaintiff incorporates paragraphs 1-35 and 38 to assert his defamation claim against the three Florida Bar officials named in paragraph 21, jointly and severally and individually.

## COUNT 17

55. Plaintiff incorporates paragraphs 1-35 and 38 to assert his defamation claim against the FLORIDA BAR BOARD OF GOVERNORS.

COUNT 18

56. Plaintiff incorporates paragraphs 1-35 and 38 to assert his defamation claim against the fifty Board member named in paragraph 23, jointly and severally and individually.

RELIEF

57. Plaintiff requests this Court enter order(s) to award,

Declaratory Relief

a. To declare that the SUPREME COURT OF FLORIDA's indefinite suspension ordered in *Solomon* was unconstitutional because it deprived plaintiff of 14th Amendment notice, hearing and equal protection.

Injunctive Relief

b. To enjoin under 1983, the indefinite suspension of plaintiff from the practice of law in Florida because the suspension is unconstitutional. The suspension is unconstitutional because it is based on five guilty findings that are objectively false, contrary to the factual findings, and contrary to court records. Most importantly, the suspension is unconstitutional because four of the five guilty findings are based on matters that were never charged.

Damages

c. To award plaintiff compensatory and punitive damages, jointly and severally and or individually from, the SUPREME COURT OF FLORIDA, the six

Florida Supreme Court Justices named in paragraph 19, the FLORIDA BAR, the three Florida Bar officials named in paragraph 21, the FLORIDA BAR BOARD OF GOVERNORS, and the fifty Board members named in paragraph 23 in an amount in excess of FIFTY MILLION DOLLARS, ($50,000,000.00).

### Fees and Costs

d. To award plaintiff costs and fees under 42 U.S.C. section 1988, and to hold the SUPREME COURT OF FLORIDA, the Florida Supreme Court Justices named in paragraph 19; the FLORIDA BAR, the three Florida Bar officials named in paragraph 21, the FLORIDA BAR BOARD OF GOVERNORS, and the fifty Board members named in paragraph 23 liable therefore jointly and severally and as individual entities; and

### Other Just Relief

e. To afford plaintiff additional or alternative relief that is just.

### Jury Demand

Plaintiff demands trial by jury.

### Oath

Under penalty of perjury I affirm the statements in this complaint are true and correct to the best of my knowledge.

*David Solomon*
David Solomon
880 Mandalay Avenue, Suite # N-911
Clearwater, FL 33767-1229
(727)442-8600

Dated: Thursday, May 30, 2002
Clearwater, FL

```
JS 44
(Rev. 12/96)
```

Attn: Yvonne Cedeno

# CIVIL COVER SHEET

02-21619

The JS-44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
David Solomon

## DEFENDANTS
Supreme Ct. of Florida

**(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF** Pinellas, FL
(EXCEPT IN U.S. PLAINTIFF CASES)

**COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT** Leon, FL
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Dade 02-21619 UUB/Brown

**(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)**
David Solomon (727)442-8600
880 Mandalay Avenue, Suite # N-911
Clearwater, FL 33767-1229

**ATTORNEYS (IF KNOWN)**
Case arose in DC. More of 62 D's live and work in Dade than any other county. Venue proper where c/a arose OR where D's live-work

**(d) CIRCLE COUNTY WHERE ACTION AROSE:** DADE, MONROE, BROWARD, PALM BEACH, MARTIN, ST. LUCIE, INDIAN RIVER, OKEECHOBEE, HIGHLANDS

## II. BASIS OF JURISDICTION (PLACE AN "X" IN ONE BOX ONLY)
1983
- [ ] 1 U.S. Government Plaintiff
- [X] 3 Federal Question (U.S. Government Not a Party)
- [ ] 2 U.S. Government Defendant
- [ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)

## IV. ORIGIN (PLACE AN "X" IN ONE BOX ONLY)
[X] 1 Original Proceeding

## V. NATURE OF SUIT (PLACE AN "X" IN ONE BOX ONLY)

(Civil Rights - 440 Other Civil Rights - 1983)

## VI. CAUSE OF ACTION
42 USC 1983. Punished without notice and hearing.

**LENGTH OF TRIAL:** via 20 days estimated (for both sides to try entire case)

## VII. REQUESTED IN COMPLAINT:
- CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
- DEMAND $ $50 million
- JURY DEMAND: [X] Yes [ ] NO

## VIII. RELATED CASE(S) IF ANY
(See instructions): USDC for DC, J. Reggie Walton, #01-1277
US Sup Ct #: unknown. JUDGE DC Ct Appeals, # 99-CV-1257

**DATE:** 5/30/2
**SIGNATURE OF ATTORNEY OF RECORD:** David Solomon

FOR OFFICE USE ONLY

RECEIPT # _____ AMOUNT $150.00 APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

#150.00  863592
05/31/02